A. LESCHEN & SONS ROPE CO. v. ALLEN et al.

(Circuit Court of Appeals, Seventh Circuit.    April 11, 1911.)

No. 1,753.

MINES AND MINERALS (§ 104*)—MINING CORPORATIONS—LIABILITY OF STOCK-
    HOLDERS—COLORADO STATUTES.

Under Mills' Ann. St. Colo. §§ 581–583, mining corporations are au-
thorized to issue and sell stock for less than its par value, and also to
make it nonassessable, and a person dealing with such a corporation
is chargeable with knowledge that the nominal value of its stock does
not necessarily represent actual capital paid in, and cannot as a creditor
hold stockholders individually liable as for unpaid subscriptions for the
difference between the face value of their stock and the amount for
which it was issued.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 228;
Dec. Dig. § 104.*]

Appeal from the Circuit Court of the United States for the District
of Indiana.

Suit in equity by A. Leschen & Sons Rope Company against Gran-
ville G. Allen and others.    Decree for defendants, and complainant
appeals.    Affirmed.

The appeal is from a decree dismissing appellant's bill for want of equity.

The bill was by appellant, a Missouri corporation, against appellees, Indi-
ana stockholders in the Tobasco Gold Mining & Milling Company, a Colorado
corporation.    Subsequently the Mining & Milling Company intervened and
became a party to the appeal.

The bill is on behalf of appellant and all other unsatisfied creditors of the
Mining Company; the appellant being a judgment creditor of the Mining
Company, upon whose judgment execution had been returned nulla bona.
The right of recovery is based upon the fact that the stock in the Mining
Company was issued to appellees without full payment of the par value
thereof—the prayer being to compel them to pay the unpaid portion.

The Mining and Milling Company was organized under the laws of Colo-
rado in 1898, with a capital stock of one million dollars, divided into one
million shares of $1.00 each.    Of this, 300,000 shares were issued to the or-
ganizers in payment of property.    The remaining shares were sold by the
Mining Company at such prices below par as, from time to time, were ordered
by the Board of Directors—such prices ranging from one cent to twenty-five
cents a share.    The certificates of stock bore on their face the statement that
they were "full paid and non-assessable," the Master finding that when the
stock was sold at one cent per share, it was considered by the directors not
to be worth any more than that amount, and when sold at prices ranging
from five cents to twenty-five cents a share, was considered by the directors
to be worth at that time the prices obtained.

The object of the corporation was to carry on a general mining and milling
business; the articles of incorporation providing that the capital stock
should be "fully paid and non-assessable."    No subscription contract, other
than as above stated, is in the record.

Appellant's judgment was upon a contract with the Mining Company re-
specting the erection of a wire rope tramway to constitute a part of its
plant.    The Master's report finds that:

"It seems evident John A. Leschen (vice-president and manager of appel-
lant) could not have received the information which he did receive on March
17, 1902 (before and at the making of the contract upon which the judgment
is based), and the day previous, without receiving the further information
that the stock of the Tobasco Gold Mining and Milling Company had always

been sold below par, and I therefore find that he did have such knowledge and that his knowledge was the knowledge of the complainant in this case."

The Constitution of Colorado provides as follows:

"No corporation shall issue stock or bonds except for labor done, services performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void."

The statutes of Colorado, relating to the organization and government of corporations generally, are as follows:

"486. Liability of Stockholders to Amount of Unpaid Stock. Each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him, to be collected in the manner herein provided. Whenever any action is brought to recover any indebtedness against the corporation, it shall be competent to proceed against any one or more stockholders at the same time, to the extent of the balance unpaid by such stockholders upon the stock owned by them respectively, whether called in or not, as in cases of garnishment."

"487. Certificate of President and Directors of Stock Paid in—Record. The president and a majority of the directors or trustees, after the payment of the last instalment of the capital stock so fixed and limited by the company, shall make a certificate stating the amount of the capital stock so fixed and paid in, which certificate shall be signed and sworn to by the president and a majority of the directors or trustees, and they shall record the same in the office of the secretary of state, and a copy in the office of the recorder of deeds of the county wherein the business of said company is carried on."

"489. Assessments Levied Pro Rata. All assessments or instalments of the stock of any stock corporation, shall be levied by the directors or trustees in accordance with the provisions of the by-laws, except as hereinafter provided, but any assessments or instalments required to be paid shall be levied pro rata upon all shares of such stock, except as hereinafter provided."

"490. Stock Issued for Property—Reports of. The directors or trustees of any corporation may purchase mines, manufactories, and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor; and the stock so issued shall be declared and taken to be fully paid stock and not liable to any further calls or assessments, except as hereinafter provided; neither shall the stockholders thereof be liable to any further payments, under the provisions of section eleven (11) of this act, but in all statements and reports of the company, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the facts."

"491. Annual Report, Sixty Days before First of January.—Penalty. Every such corporation shall annually, within sixty days from the first day of January, make a report, which shall state the amount of its capital stock and the proportion actually paid in, and the amount of existing debts; which report shall be signed by the president and shall be verified by the oath of the president or secretary of said company, under its corporate seal, and filed in the office of the recorder of deeds of the county where the business of the company shall be carried on. And if any such corporation shall fail so to do, unless the capital stock of such corporation has been fully paid in and a certificate made and filed as provided in section 12 of this act, all the directors or trustees of the company shall be jointly and severally liable for all the debts of the company that shall be contracted during the year next preceding the time when such report should by this section have been made and filed, and until such report shall be made."

"497. Forfeiture of Company—Causes—Default—Liability of Stockholders —Action. If any corporation, or its authorized agent, shall do any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record for a payment of money, after demand made by the officer, to be returned 'no property found,' or to remain unsatisfied for ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way for the debts of the corporation, by joining the corporation in such suit, and each stockholder may be required to pay such debts or liabilities to the extent of

the unpaid portion of his stock, and courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor, who shall have authority by the name of the receiver of such corporation (giving the name) to sue in all courts, and to do all things necessary to closing up its affairs as commanded by the decree of the court."

Under the subdivision of "Mining Companies," the statutes of Colorado provide:

"581. What Certificate must State—Stock Assessable—Non-assessable. Any ore reducing, mining or tunneling company, organized under the provisions of this act, shall have the power to acquire by purchase or otherwise, mining property, and work, mine, tunnel and develop the same, erect necessary buildings, mills, machinery and appliances, and purchase materials for the proper working thereof, and do any and all things necessary and requisite to carry into effect the objects for which they may be formed, as named in their certificate of organization. The certificate of incorporation of any such company, in addition to the other matters required in this act to be stated therein, shall contain a statement that the stock of such company is either assessable or non-assessable, and each certificate of stock issued by any such company shall have plainly printed on the face thereof the word 'assessable' or 'non-assessable' as the case may be."

"582. Full Paid Stock—Stock Assessable or Non-assessable. Any mining company organized under the provisions of this act, may, for the purpose of purchasing mining property, and providing a capital for carrying on the business of the company, issue full paid stock in payments of the same, which shall be non-assessable, until the balance or whole amount of the capital stock shall have been assessed to the par value thereof and fully paid, after which the stock shall be equally and ratably liable to assessment for the operations of the company. Provided, however, any company may issue all its stock assessable or non-assessable, but no company shall issue both assessable and non-assessable stock, except as provided in this section."

"583. Assessments—Limit—Meeting of Stockholders—Notice. The board of directors of any such company may make assessments upon the assessable stock of the company, but no single assessment shall exceed five per cent. of the par value of said stock, and no such assessment shall be levied oftener than once in three months. When the board of directors shall deem it necessary that assessments be made as aforesaid, they shall call a meeting of the stockholders to be held at the principal office of the company, not less than thirty days from the publication of such call; notice of such meeting shall be signed by the president or secretary of the company, and shall state the object of such meeting and the time and place where the same will be held, and the same shall be published in some newspaper in the county where the operations of such company are carried on, if there be one, once each week for four consecutive weeks, and also in some daily paper of general circulation at the place where the principal office of such company is located, if there be one, each day for thirty days; the last publication to be at least ten days before the time appointed for such meeting, and if there be no daily paper in the place where the principal office of the company is located, then the same shall be published in a weekly paper, if there be one, once each week for four consecutive weeks before the time for such meeting, and notice shall be personally served upon each stockholder, or in lieu of personal service, notice of such meeting shall be mailed to each stockholder, at his last known place of residence; and if at such meeting, the stockholders representing a majority of the stock shall vote in favor thereof, the directors or trustees shall make the assessments. Provided, that no assessment or assessments so authorized, or any part thereof, as provided for in this section, shall be due and payable in less than thirty days from the date of such assessment."

Further facts are stated in the opinion.

Morris M. Townley, for appellant.
Addison C. Harris, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion:

Mining enterprises are essentially different from business enterprises generally. In a mining enterprise, initially, the visible asset usually is a little tract of ground staked out, and worth nothing except for what may be found underneath. What may be found underneath is a prospect only; so that the mining enterprise that begins with such a tract of ground is, to a large degree, a legalized gamble—legal and laudable because it is the only way in which useful minerals can be brought to the uses of civilization.

As the enterprise is different from enterprises generally, so its financing must be different. Those who take the largest chances are those in initially; they are, therefore, entitled to the largest reward in case the prospect materializes. Those who come in when ore is reached, its extent and paying qualities still uncertain, take a lesser chance; they are entitled, therefore, to a lesser reward. And those who come in when the quantity and quality of the ore is substantially apparent, take a still lesser chance—a chance more nearly measured by business ventures generally—and are therefore entitled to a still smaller reward upon the money advanced. The whole business of mining enterprise is compelled to accommodate itself to these practical considerations. Of course the mine, as an investment enterprise, continues to vary from time to time, which often makes it necessary that during its whole history there should be pliability in the method of raising money to finance it.

These practical considerations, and the pliability of financing to meet them, can be met either by allowing the more speculative issues of stock to be made at less than par and non-assessable (for non-assessability in that case would be essential), increasing the price as the speculative feature of the enterprise disappears, or by issuing the stock initially at par, increasing the price to figures beyond par as the enterprise proceeds. But which method shall be used, is a matter of policy for each State to decide for itself.

That Colorado differentiates between the incorporation of enterprises of this kind and general enterprises, clearly appears from its statutes. By the laws of that State, mining companies are put upon a basis distinctively their own. Whatever interpretation, therefore, is to be put upon the Colorado law respecting corporations generally, as to their stock being fully paid, either in cash or property, the value of which has been fixed in good faith, and whatever rights remain to creditors of such corporations when their stock has not been fully paid, is not determinative of the same questions in Colorado mining companies. The policy of Colorado, as expressed in its statutes, respecting mining companies, must be derived from the interpretation of the statutes that relate to such companies only.

The statutes hereinbefore set out clearly show that the policy of Colorado, respecting mining companies, contemplates corporations (a) issuing "full paid" stock but assessable; or (b) "full paid" stock nonassessable; or (c) "full paid" stock, part of which should be nonassessable until the other part had been fully assessed up to its par

value. Now this carries with it, it seems to us, the purpose that the "full paid" stock, whether assessable or non-assessable, or partly assessable and partly non-assessable, shall be less than par—in other words that that is the alternative method of financing above indicated, that Colorado has adopted—for there is nothing in the Colorado statutes that provides for, permits, or in any way looks to assessability of stock paid up to par; and it is only in the light of this interpretation that any meaning can be placed upon the provision for stock, part of which is non-assessable "until the balance or whole amount of the capital stock shall have been assessed to the par value thereof and fully paid," as provided in section 582. And that this means "assessable" or "non-assessable" in the sense of full final payment, as distinguished from merely the method whereby corporations generally obtain eventual full payment of their stock, is evidenced by the fact that it is only in mining corporations that there is any provision that "any company may issue all its stock assessable or non-assessable," or that the certificates of stock "shall have plainly printed on the face thereof assessable or non-assessable"—provisions wholly inapplicable to assessment as a mere method of eventual full payment. No other interpretation of the Colorado statutes, relating to mining companies, seems to us to be open; and in the absence of interpretation by the Colorado courts of last resort (no Colorado decision of any kind upon this point has been called to our attention), we adopt this interpretation.

The appellant was dealing with a mining corporation thus organized. Whether the appellant had notice or not (the Master finds that it had notice) that the stock issued to the appellee stockholders had been issued at less than par, seems of little consequence, for appellant did have notice of the laws of Colorado authorizing non-assessable mining stock (the corporation was a Colorado corporation), and that the stock issued to these stockholders was of that character. There is no room, therefore, for applying to appellant the doctrine that a creditor, dealing with a corporation, has a right to rely upon the assumption that the nominal capital stock of the Company expresses the amount paid in in property or otherwise; appellant was bound to know that, under the law, par value need not be paid in where the stock was made on its face, and by the charter of the company, non-assessable. This view of this case takes it out of the rules laid down in Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; Richardson v. Green, 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; and Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, and the other cases cited by appellant's counsel, for those cases were interpretative of statutes entirely different from this Colorado statute relating to mining companies. The Kentucky statute, for instance, in Handley v. Stutz, provided that nothing in the act conferring corporate franchises "shall exempt the stockholders of any corporation from individual liability to the amount of the unpaid instalments on stock owned by them." "The stock of a corporation" says the Court (the Court was speaking of the Kentucky corporation) "is supposed to stand in the place of actual property of substantial value, and as

being a convenient method of representing the interest of each stockholder in such property, and to the extent to which it fails to represent such value it is either a deception and fraud upon the public, or an evidence that the original value of the corporate property has become depreciated. The market value of such shares rises with an increase in the value of the corporate assets, and falls in case of loss or misfortune, whereby the value of such assets is impaired. And the increase of value of such stock is taken to represent either an appreciation in value of the company's property beyond the par value of the original shares, or so much money paid to the corporation as is represented by such shares." This language is wholly inapplicable to a mining venture, as contemplated by the Colorado laws relating to mining corporations; and it makes unessential, also, the principle underlying the cases thus cited "that the capital stock of a corporation, when it becomes insolvent, is in law assets of the corporation to be appropriated to the payment of its debts." For unless there is something due from these appellee stockholders upon their capital stock, under the Colorado statutes, there is no occasion for the application of this principle.

The decree appealed from is affirmed.